Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **EDWIN ALONSO RODRÍGUEZ, EN SU CAPACIDAD DE ALBACEA DE LA SUCN. SANTOS ALONSO MALDONADO**<br><br>Demandante-Apelante<br><br>v.<br><br>MAYAGÜEZ RESORT & CASINO, INC.<br><br>Demandado<br><br>v.<br><br>EDWIN ALONSO RODRIGUEZ, EN SU CAPACIDAD INDIVIDUAL, NANCY IVETTE APONTE RIVERA Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA ENTRE AMBOS<br><br>Terceros Demandados | TA2026AP00133<br><br>consolidado con<br><br>TA2026AP00139 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso núm.: MZ2023CV01741<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato |
| **S.A. PROPERTIES, INC.**<br><br>Demandante-Apelante<br><br>v.<br><br>MAYAGÜEZ RESORT & CASINO, INC.<br><br>Demandado-Apelado | | Caso núm.: MZ2023CV01772<br><br>Sobre: Cobro de Dinero, Incumplimiento de Contrato |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2026.

Por una supuesta ausencia de legitimación activa, el Tribunal de Primera Instancia ("TPI"), por la vía sumaria, desestimó una acción de cobro de cánones de arrendamiento al amparo de un contrato entre una sociedad especial (dueña) y una corporación

(arrendataria). Según se explica en detalle a continuación, concluimos que erró el TPI, pues la extinción de la sociedad especial, a raíz del fallecimiento de uno de sus socios, no extingue la acreencia en controversia, la cual puede reclamarse por el otro socio y por el albacea del socio fallecido.

I.

En octubre de 2023, el Sr. Edwin Alonso Rodríguez (el "Hijo") y Mayaguez Tourist Development, S.E. ("MTD") presentaron una de las acciones de referencia, sobre cobro de dinero e incumplimiento de contrato (MZ2023CV01741). Unos días después, S.A. Properties, Inc. (el "Socio Corporativo"), presentó la otra acción de referencia, también sobre cobro de dinero e incumplimiento de contrato (MZ2024CV01772). Ambas acciones (las "Demandas") se dirigieron en contra de Mayagüez Resort & Casino, Inc. (el "Operador" o "Arrendatario"), y en ambas se reclama que el Arrendatario dejó de pagar el canon de arrendamiento pactado con MTD. Las Demandas fueron consolidadas por el TPI.

En las Demandas se alega que MTD suscribió, en diciembre de 2006, un contrato de arrendamiento con el Operador (el "Contrato"), respecto de un inmueble en el cual opera un hotel. Se alega que el Contrato está vigente y que, desde el 1 de enero de 2012, el Operador no ha pagado el canon de arrendamiento pactado ($258,542.75 mensuales).

El Hijo alegó que era el hijo, y el albacea de la sucesión, de Don Santos Alonso Maldonado (el "Causante"). Señaló que MTD era una sociedad especial, la cual, al fallecer el Causante (31 de enero de 2023), tenía dos socios: el Causante y el Socio Corporativo.

El Operador contestó las Demandas y reconvino. Arguyó que dicha entidad, junto a MTD y el Socio Corporativo, eran parte del caudal ganancial del Causante y su esposa, Sa. Iris Rodríguez Rosa (la "Esposa"), quien falleció el 13 de enero de 2023 (unos días antes

del fallecimiento del Causante). Arguyó que, por tal razón, el Hijo no podía tomar decisiones administrativas de forma unilateral. También alegó que, desde el 2 de enero de 2012, el Contrato perdió su eficacia debido a una novación del mismo. En su reconvención, el Arrendatario arguyó que el Hijo estaba violando sus deberes de fiducia hacia el caudal de la sucesión del Causante y hacia el propio Operador, pues este era miembro de la Junta de Directores del Operador.

Un tiempo luego, la Sa. Debbie Alonso Rodríguez (la "Hija") solicitó intervención en las Demandas; sostuvo ser hija del Causante y la Esposa, así como la albacea de la sucesión de la Esposa. Arguyó que el Hijo no podía, sin su consentimiento, instar la reclamación contenida en la primera demanda de referencia. El TPI autorizó la intervención solicitada.

En junio de 2025, la Hija presentó una *Moción de Sentencia Sumaria*[1] (la "Moción"). Además de lo reiterar lo planteado al solicitar intervención, sostuvo que MTD, al haber quedado disuelta con el fallecimiento del Causante, tenía que liquidar su patrimonio antes de cobrar cualquier acreencia, incluida la reclamada contra el Operador.

El Hijo y el Socio Corporativo (los "Demandantes") se opusieron a la Moción. Plantearon que, al fallecer el Causante, nació una comunidad post-societaria entre la sucesión de este y el Socio Corporativo, subsistiendo el derecho de cobrar la deuda reclamada al Operador. También alegaron que la Esposa no fue socia de MTD.

Mediante una Sentencia notificada el 7 de octubre[2] (la "Sentencia"), el TPI desestimó las Demandas. El TPI razonó que, al no haberse todavía liquidado MTD, ni el Hijo ni el Socio Corporativo

---

[1] Entrada [216], Sistema Único de Manejo y Administración de Casos ("SUMAC") *Moción de Sentencia Sumaria.*
[2] Entrada 267, SUMAC, *Sentencia*, págs. 4-10.

tenían legitimación activa para presentar las Demandas. Además, concluyó que "se presume" que la participación del Causante en MTD era "ganancial", y que no habiendo quedado "rebatida" la misma, la Esposa era "socia y dueña en MTD en igual proporción" que el Causante. El TPI entonces razonó que el Hijo no podía, sin el consentimiento de la Hija, instar la reclamación en controversia, pues era necesaria la concurrencia de los albaceas de ambas sucesiones. Finalmente, el TPI condenó a los Demandantes al pago de honorarios por temeridad, pues la reclamación contenida en las Demandas es "a todas luces frívol[a]".

En cuanto a los hechos, en la Sentencia, el TPI determinó que no había controversia sobre lo siguiente:

1. Santos Alonso Maldonado e Iris María Rodríguez Rosa, conocida por Iris M. Rodríguez Rosa y por Iris Rodríguez Rosa estuvieron casados en únicas nupcias bajo el régimen de sociedad legal de gananciales desde el 19 de noviembre de 1956.

2. Santos Alonso Maldonado, casado con Iris M. Rodríguez Rosa, Ángel Luis Rosas Collazo, José Juan Álvarez Massini, Luis Falto Pérez y el Westernbank mediante la escritura número 76 sobre Constitution of a Civil Partnership Under the Provisions of the Special Partnership Act otorgada el 31 de marzo de 1995 ante el notario José M. Biaggi Junquera, crearon la Sociedad Especial Mayagüez Tourist Developmet S.E., (en adelante MTD).

3. Por voluntad de los socios, la sociedad especial MTD sería una de naturaleza civil.

4. Los socios excluyeron toda mención del Código de Comercio en la sociedad MTD.

5. La sociedad especial MTD fue modificada mediante la Escritura número 67 sobre Modification of Civil Partnership otorgada el 26 de febrero de 1996 ante el notario José M. Biaggi Junquera en la que los socios Ángel Luis Rosas Collazo, José Juan Álvarez Massini, Luis Falto Pérez, Santos Alonso Maldonado (casado) y José Arturo Lugo Lugo adquieren la participación de Westernbank Puerto Rico en dicha Sociedad Especial.

6. En la Escritura número 67 sobre Modification of Civil Partnership, Santos Alonso Maldonado, comparece casado con Iris María Rodríguez Rosa.

7. Luego de adquirir la participación de WesternBank, el porciento de participación de Santos Alonso Maldonado y su esposa aumentó a un 20%.

8. En el año 2009, Santos Alonso Maldonado y su esposa Iris María Rodríguez Rosa, compraron la participación de José Juan Álvarez Massini y Rosa María Agrait Muñiz en Mayagüez Resort & Casino, Inc. y Mayagüez Tourist Development, S.E. por la suma de $5,000,000.00 mediante Contrato de Compraventa de Acciones Corporativas y Participación de Sociedad fechado 9 de marzo de 2009 suscrito ante el notario Luis E. Pérez Lebrón, affidavit número 36,362.

9. En el año 2009, Santos Alonso Maldonado y su esposa Iris María Rodríguez Rosa compraron la participación de don Luis Falto Pérez, quien había fallecido, a su sucesión -Sucesión de don Luis Falto Pérez-, representada por su albacea Zoraida Cruz Ortiz, en Mayagüez Resort & Casino, Inc. y Mayagüez Tourist Development, S.E. por la suma de $5,000,000.00 mediante Contrato de Compraventa de Acciones Corporativas y Participación en Sociedad fechado 3 de diciembre de 2009 suscrito ante el notario Luis E. Pérez Lebrón, affidavit número 36,541.

10. En el año 2011 Santos Alonso Maldonado y su esposa Iris María Rodríguez Rosa compraron la participación de José Arturo Lugo Lugo casado con Doris Rivera Hernández en Mayagüez Resort & Casino, Inc. y Mayagüez Tourist Development, S.E., por la suma de $8,000,000.00 mediante Contrato de Compraventa de Acciones Corporativas y Participación en Sociedad fechado 11 de enero de 2011 suscrito ante la notario Yaritza del C. Hernández Bonet, affidavit número 1,258.

11. Luego de las compraventas de participaciones, marcadas en los incisos 8, 9 y 10 anteriores, Santos Alonso Maldonado e Iris María Rodríguez Rosa, en beneficio de la Sociedad Legal de Gananciales, habían adquirido el cien por ciento (100%) de las participaciones de MTD.

12. Santos Alonso Maldonado, casado con Iris María Rodríguez Rosa compareció para otorgar la Escritura número 4 sobre Second Modification of Civil Partnership otorgada el 21 de marzo de 2011 ante el notario Luis E. Pérez Lebrón para manifestar la venta de 5% de participación en Mayagüez Tourist Development, S.E., a S.A. Properties, Inc. Dicha escritura sirvió además para ratificar las compras de participaciones que Santos Alonso Maldonado e Iris María Rodríguez Rosa hicieron previamente, que se describen en los incisos 8, 9 y 10 anteriores.

13. Iris María Rodríguez Rosa falleció testada el 13 de enero de 2023.

14. La albacea testamentaria de Iris María Rodríguez Rosa, es su hija Debbie Alonso Rodríguez, obtuvo las Cartas Testamentarias.

15. Santos Alonso Maldonado falleció testado el 31 de enero de 2023.

16. El albacea testamentario de Santos Alonso Maldonado es su hijo Edwin Alonso Rodríguez.

17. Al fallecer don Santos Alonso Maldonado y doña Iris M. Rodríguez Rosa, MTD quedó con un solo miembro, S.A. Properties, Inc. y en tal situación la Sociedad Especial se extinguió.

18. Conforme los acuerdos establecidos en la escritura de constitución de MTD, la misma se llevó a cabo por virtud de:
    a. La Ley 8 de 19 de julio de 1985.
    b. Los Capítulos 319 a 323 del Código Civil de Puerto Rico de 1930, incluyendo los artículos 1556 al 1599.

19. Por acuerdo de los socios en la Escritura de Constitución de Sociedad, sección 9.02 de la Escritura número 76, el acuerdo y las obligaciones de los socios serían interpretados y ejecutados bajo las leyes del Estado Libre Asociado de Puerto Rico.

20. Conforme la sección 4.4 de la escritura número 76,2 los socios acordaron que la Sociedad quedará disuelta cuando:
    "--Section 4.04 Dissolution
    ---The Partnership shall be dissolved upon the happening of any of the following events:
    ---(a) The sale or other disposition of all or a substantial part of the assets of the Partnership unless the Partners elects to continue the Partnership business for the purpose of receipt and collection of a note and payments there on or the collection of any other consideration to be received in exchange for the assets of the Partnership (which activities shall be deemed to be part of the Capital Transaction and the winding up of the affairs of the Partnership)
    ---(b) The election to dissolve the Partnership made in writing by the Partners and upon approval by the Secretary or Treasury;
    ---(c) Any other act or event causing dissolution under the laws of Puerto Rico."

21. La intención de los socios de no permitir extraños o transferencias a extraños en la sociedad queda dispuesto de manera patente en el Artículo V, secciones 5.1 a 5.4 de la Escritura número 76, las que disponen lo siguiente:
    "--ARTICLE V. ASSIGNMENT
    ---Section 5.01 Prohibited Transfers
    ---Except as provided in this Article V, no Partner may sell, assign, or otherwise transfer, mortgage, hypothecate, or otherwise encumber or permit or suffer any encumbrance of all or any part of his interest in this Partnership unless approved in writing by all of the Special Partners. Any attempt

to transfer, assign or encumber any such interest shall be void.

---Section 5.02 Permitted Transfers

---(a) Each of the Partners shall have the right, without the consent of the other Partners, to transfer all or any part of its interest in the Partnership to an Affiliated Corporation, the stock of which is all or wholly owned by a Partner or any such Partner's Affiliated Corporation.

---(b) In the event of any transfer or transfer permitted under this Article, the interest so transferred shall be and shall remain subject to all terms and provisions of this agreement; the assignee or transferee shall be deemed to have assumed all the obligations hereunder relating to the interests or rights so transferred, and shall have such obligation jointly and severally with his or its transfer or. Not with standing any transfer by any of them, the Partners shall each remain (as between such party and the other Partner) primarily and directly liable for performance of all of such party's obligations here under. No change in ownership of any interest in the Partnership or rights under this agreement shall be binding upon any other Partner until a certified copy of all instruments executed and delivered in connection with such transfer or assignment shall have been delivered to such other Partners.

---Section 5.03 Right of First Refusal

---(a) Offer to Sell. Any Partner ("Offeror") desirous of selling his Partnership interest shall first offer the same to the Partnership or all of the other Partners in that order before offering the same to third parties. The offer to sell Offeror's Percentage Interest (the"Offer to Sell") shall remain irrevocable for a period of thirty (30) days, after made by written notice from Offeror to Offeree starting a purchase price (the "Purchase Price).

---(b) Response. Offeree shall respond in writing to the Offer to Sell ("the "Response") within said thirty (30) day period, and if the affirmative, the closing of the transfer of the Percentage Interest of Offeror (the "Closing") shall take place thirty (30) days after the Response or on such earlier date as both Partners may mutually agree, if not Offerr to be free to sell to third parties.

---Section 5.04 Gift of Partnership Interest.

---No gift of his Partnership interest by any Partner shall be permitted unless the other Partners have been notified of such intention in writing and given their approval, also in writing.".

22. Al presente no se ha llevado a cabo la liquidación de comunidad post ganancial de don Santos Alonso Maldonado e Iris María Rodríguez Rosa.

23. Al presente no se ha llevado a cabo la liquidación y partición de MTD, no se ha citado a la albacea de Iris M. Rodríguez Rosa a formar el inventario de activos y pasivos de MTD, ni contratada la valoración de los bienes activos y pasivos.

El 22 de octubre, los Demandantes solicitaron la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante una Resolución notificada el 8 de enero de 2026.

Inconformes, el 9 de febrero (lunes), el Socio Corporativo y el Hijo presentaron los recursos que nos ocupan. El Hijo sostuvo que, como albacea de la sucesión del Causante, tiene legitimación para instar acciones en cobro de dinero que benefician a dicha sucesión. Arguyó que, para fines de "liquidar y cobrar sus créditos pendientes, pagar sus deudas y proceder con la distribución de bienes entre sus partícipes", subsiste la personalidad de una sociedad especial luego de su disolución.

Por su parte, el Socio Corporativo arguyó que, como socio de MTD, tenía legitimación activa para reclamar cualquier acreencia de MTD, como parte del proceso de liquidación, y que, para esos fines, MTD no había perdido personalidad por el fallecimiento del Causante.

La Hija presentó un alegato en oposición a ambos recursos. Aunque admite que "[e]l cobro de acreencias es efectivamente parte del proceso de liquidación" de MTD, arguye que, en este caso, los Demandantes realmente no habían "inicia[do] proceso alguno de liquidación", sino que "optaron por incoar directamente acciones de cobro de dinero …". Señala, por tanto, que "era una acción de liquidación de MTD … lo que había que radicar y no un cobro de dinero." Sostiene que, como el "patrimonio social … pertenece en común proindiviso a dos sucesiones", los Demandantes no podían "unilateralmente" presentar las Demandas para beneficio de MTD. Resolvemos.

II.

La sentencia sumaria es un mecanismo cuya finalidad es "propiciar la solución justa, rápida y económica de controversias en las cuales resulta innecesario celebrar un juicio plenario". *Meléndez*

*González et. al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata v. J.F Montalvo*, 189 DPR 414, 430 (2013). Este mecanismo procesal se rige por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En particular, la Regla 36.3 (e) de las de Procedimiento Civil, supra, dispone que procede dictar sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, si la hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica. Así, se permite disponer de asuntos pendientes ante el foro judicial sin necesidad de celebrar un juicio, ya que únicamente resta aplicar el derecho a los hechos no controvertidos. *Meléndez González et. al.*, supra; SLG Zapata, supra; *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012).

Si se concluye que "existe una controversia real y sustancial sobre hechos relevantes y pertinentes", no procede dictar sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Meléndez González et. al.*, supra; *Ramos Pérez*, 178 DPR a la pág. 213, citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. J.T.S., 2000, T. I, pág. 609; *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001); *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 577 (1997).

La parte promovente de una solicitud de sentencia sumaria está obligada a establecer, mediante prueba admisible en evidencia, la inexistencia de una controversia real respecto a los hechos materiales y esenciales de la acción. Además, deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *Ramos Pérez*, supra; *Vera v. Dr. Bravo*, 161 DPR 308,

332-333 (2004).  Cuando de las propias alegaciones, admisiones o declaraciones juradas, surge una controversia de hechos, la moción de sentencia sumaria es improcedente.  *Mgmt. Adm. Servs., Corp. v. ELA*, 152 DPR 599, 610 (2000).

De esta forma, quien se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada.  La oposición debe exponer de forma detallada y específica los hechos pertinentes para demostrar que existe una controversia fáctica material, y debe ser tan detallada y específica como lo sea la moción de la parte promovente pues, de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho.  Regla 36 (c) de las de Procedimiento Civil, supra.  Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material.  A tales efectos, el juzgador no está limitado por los hechos o documentos que se aduzcan en la solicitud, sino que debe considerar todos los documentos del expediente, sean o no parte de la solicitud de sentencia sumaria, de los cuales surjan admisiones hechas por las partes. *Const. José Carro v. Mun. Dorado*, 186 DPR a la pág. 130, citando a *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 280-281 (1990).

III.

Por su parte, el Código Civil de Puerto Rico de 2020 ("Código Civil") describe al **albacea** como la persona designada de forma expresa por el testador para ejecutar o vigilar la ejecución de su última voluntad.  (31 LPRA sec. 11511).  El albacea es "[…]aquella persona de confianza del testador, llamada por [e]ste para cumplir y ejecutar las disposiciones del testamento, aun contra la voluntad de los interesados". *Freire Ruiz et al. v. Morales, Hernández,* 2024 TSPR

129, 215 DPR ___ (2024) citando a E. González Tejera, Derecho de sucesiones, San Juan, Ed. UPR, 2001, T. 11, pág. 536.

Por lo cual, de conformidad con el Artículo 1740 del Código Civil, el albacea tendrá aquellas facultades que establezca el causante en su testamento, siempre que estas no estén en contra de la ley.  (31 DPR sec. 11513).  No obstante, destaca el referido artículo, que del testador no determinar las facultades, este podrá:

> a) tomar las precauciones necesarias para la conservación y custodia de los bienes;  b) ejecutar lo ordenado en el testamento, siendo legal, y sostener su validez;  c) intervenir en los litigios o incidentes que se susciten sobre los bienes hereditarios;  d) pagar los legados, con el consentimiento de los herederos; y  e) realizar la partición de la herencia cuando no hay contador partidor. Íd.

Así pues, en el ejercicio de sus funciones, el albacea debe ser parte en toda causa de acción en la cual se impugne la validez del testamento. *Freire Ruiz et al. v. Morales, Hernández*, supra.  De igual forma, este podrá iniciar o intervenir en cualquier procedimiento judicial que afecte sus deberes y funciones.   Íd. citando a E. González Tejera, op. Cit., pág. 573.

## IV.

Por otro lado, la figura jurídica denominada sociedad civil es un contrato por medio del cual "dos o más personas se obligan a poner en común dinero, bienes o industria con ánimo de partir entre sí las ganancias".[3] Véase Código Civil de Puerto Rico de 1930 (31 LPRA ant. Sec.4311).  Esta no tendrá requisito de forma, salvo que se le aporten derechos sobre bienes inmuebles o derechos reales; siendo este último el caso, corresponderá otorgar el contrato por medio de escritura pública. Véase Código Civil de Puerto Rico de 1930 (31 LPRA ant. Sec.4313).

Entre los distintos tipos de sociedades civiles, existen las sociedades especiales.  Esta organización económica fue dispuesta

---

[3] MTD se creó bajo el antiguo Código Civil de Puerto Rico de 1930.

con el propósito de incentivar el desarrollo de ciertas actividades económicas. Véase Código de Rentas Internas para un Nuevo Puerto Rico, Ley núm.1-2011 (13 LPRA sec. 30551). En cuanto a su tratamiento, estas se regirán por lo pactado en el contrato de sociedad y de forma supletoria por el ordenamiento civil. Véase *Marcial v. Tome*, 1997 DPR 522, 545-46 (1997). Asimismo, el inicio de la sociedad, a excepción de pacto distinto, se constituirá en el momento de otorgación del contrato. Véase *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 488(2010); Art. 1570 del Código Civil de 1930 (31 LPRA ant. sec. 4341).

Por su parte, su duración estará condicionada: 1) al periodo pactado 2) al periodo que dure el negocio por el cual fue constituida, si por su naturaleza tuviera alguno, 3) a la vida de los socios, sujeto a excepciones. Íd. a la pág. 489. Art. 1571 del Código Civil de 1930 (31 LPRA sec. 4342).

De igual modo, el Código Civil del 1930 establece las causales para su extinción, siendo estas:

> 1) cuando expira el término pactado; 2) cuando se pierde la cosa que le sirve de objeto; 3) cuando finaliza el negocio que le sirve de objeto; 4) cuando muere un socio; 5) cuando un socio adviene insolvente; 6) cuando un acreedor de un socio embarga su participación en la sociedad; 7)cuando un socio anuncia de buena fe y oportunamente su voluntad de que así sea si no se fijó un término para la duración de la sociedad y éste no resulta de la naturaleza del negocio; y (8) cuando un socio de una sociedad constituida a un término fijo, mediante contrato o por su naturaleza, tiene, a juicio de los tribunales, justa causa para pedir la disolución. *Marrero*, 178 DPR a la pág. 489.

En este sentido, disuelta una sociedad, ocurre su muerte jurídica y, por consiguiente, inicia su proceso de liquidación. *Marrero,* 178 DPR a la pág. 489 (citando a *Paz Vda. De Barletta v. Registrador*, 43 DPR 870, 872 (1832)). **El proceso de disolución consistirá en realizar todas aquellas operaciones que sean necesarias para concluir los contratos pendientes; ello incluye el pago y cobro de acreencias.** (Énfasis nuestro). *Marrero,* 178 DPR a la pág. 489-

490.   El fin de estos trámites determinar el haber sociable partible. Íd. a la pág.490; *Marcial*, 144 DPR a la pág. 552.  Una vez finalizado el proceso de liquidación, corresponde "llevar a cabo [la partición] de acuerdo [con] las normas que rigen la partición de los caudales hereditarios, tanto en su forma como por las obligaciones que generan, aunque ello no excluye los acuerdos que los socios estimen convenientes". Íd.  Este proceso del liquidación o disolución de una sociedad se considera equivalente al de una corporación cerrada. *Marcial*, 144 DPR a la pág. 552.

V.

Por su parte, en ausencia de capitulaciones matrimoniales válidas, rige en el matrimonio el régimen la sociedad legal de bienes gananciales.  *Betancourt González v. Pastrana Santiago,* 200 DPR 169, 177-1778 (2018).  Véase Art. 489 Código Civil (31 LPRA 6912). Por su parte, el Artículo 507 del Código Civil, 31 LPRA sec. 6951, dispone que:

> [...] ambos cónyuges son los titulares de los bienes comunes en igualdad de derechos y obligaciones. Al disolverse la sociedad, se atribuyen por mitad los bienes acumulados y las ganancias o beneficios obtenidos indistintamente por cualquiera de ellos, mientras estuvo vigente el matrimonio.
>
> Disuelta la sociedad de gananciales,
>
> [...]surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente e inalienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división". *Betancourt González v. Pastrana Santiago,* 200 DPR a la pág. 179*; Montalván v. Rodríguez,* 161 DPR 411, 421 (2004) citando a J.L. Lacruz Berdejo, Elementos de Derecho Civil Barcelona, Ed. J.Ma. Bosch, editor, 1997, pág. 353.; *González v. Quintana,* 145 DPR 463, 469 (1998).

A su vez, el Artículo 513 del Código Civil declara bienes gananciales "los adquiridos a título oneroso y a costa del caudal común, bien se haga la adquisición para la sociedad conyugal, para

el disfrute y provecho de los miembros de la familia o para uno solo de los conyugues". 31 LPRA sec. 6965.

De esta forma, "[s]e presumen gananciales los bienes del matrimonio mientras no se pruebe que pertenecen privativamente a cualquiera de los conyugues". Art. 519 Código Civil (31 LPRA sec. 6971); Véase *Sucn. Rosado v. Acevedo Marrero*, 196 DPR 884,902 (2016). Sin embargo, esta presunción de carácter evidenciario, es controvertible. Véase *García v. Montero Saldaña*, 107 DPR 319, 335-336 (1978).

## VI.

La norma vigente es que los tribunales en Puerto Rico solo pueden actuar ante una controversia "justiciable". *Ramos, Méndez v. García García*, 203 DPR 379, 393-394 (2019); *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 60 (2009); *Com. De la Mujer v. Srio. de Justicia*, 109 DPR 715, 720 (1980). Así, en el ordenamiento jurídico vigente, "los tribunales existen únicamente para resolver controversias genuinas surgidas entre partes opuestas que tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas". *ELA v. Aguayo*, 80 DPR 552, 558-559 (1958). Por lo cual, una "controversia abstracta, ausente de un perjuicio real y vigente a los derechos de la parte que los reclama" no es justiciable. *Mun. de Aguada v. JCA*, 190 DPR 122, 132 (2014).

Con el propósito de proteger dicho principio, se han desarrollado jurisprudencialmente varios criterios de justiciabilidad que delimitan la facultad de los tribunales para entender en asuntos traídos ante sí. *Romero Barceló v. ELA*, 169 DPR 460, 470 (2006). Entre éstos, la legitimación activa de las partes promoventes en un pleito.

La capacidad de una parte para realizar con eficacia actos procesales como parte litigante y comparecer como demandante se conoce propiamente como legitimación. Se requiere legitimación

activa para ser demandante y pasiva para ser demandado. *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 563 (1989).

Para que la controversia sea justiciable, es necesario que las partes tengan legitimación. A su vez, para tener legitimación activa, es necesario que la parte reclamante haya "sufrido un daño claro y palpable"; que sea "inmediato, preciso, no abstracto ni hipotético"; que exista una "relación causal razonable entre la acción que se ejecuta y el daño alegado"; y que la causa de acción surja al amparo de la Constitución o de alguna ley. Íd.; *Fund. Surfrider v. ARPe*, 178 DPR 563, 572 (2010); *Romero Barceló v. ELA*, a las págs. 470-71 (2006); *Hernández Torres v. Hernández Colón*, 131 DPR 593, 599 (1992); *Fund. Arqueológica v. Depto. Vivienda*, 109 DPR 387, 392 (1980).

La norma es que, para tener legitimación activa, es necesario alegar un daño concreto y particular, distinto al que podría tener cualquier ciudadano, el cual podría atenderse a través del remedio que se solicite del tribunal. *Mun. de Aguada*, 190 DPR a la pág. 146; *Fund. Arqueológica*, 109 DPR a la pág. 392. Para esto, "[r]esulta indispensable que el daño alegado sea concreto y particular, pues un daño generalizado que el demandante comparta con el resto de la ciudadanía impide la configuración de su legitimación activa." *Romero Barceló*, 169 DPR a la pág. 471. Las puertas de los tribunales no están "abierta[s] de par en par para la consideración de cualquier caso que desee incoar cualquier ciudadano en alegada protección de una política pública". *Fund. Surfrider*, 178 DPR a la pág. 573 citando *Salas Soler v. Scrio. de Agricultura*, 102 DPR 716, 723-24 (1974).

VII.

La intervención es un mecanismo procesal que permite la comparecencia de un tercero en un pleito judicial. Véase *IG Builders v. BBVAPR*, 185 DPR 307, 370 (2012). Esta facultad está

reglamentada en la Regla 21 de las de Procedimiento Civil, la cual dispone que una persona tendrá derecho a intervenir en un pleito cuando: 1) el ordenamiento le conceda un derecho incondicional a intervenir; o 2) pueda quedar afectado algún derecho de esta persona con la determinación final del pleito.  Véase Regla 21.1 de las de Procedimiento Civil (32 LPRA Ap. V).  Igualmente, el tribunal tendrá discreción para permitir la intervención cuando exista un derecho condicional a intervenir y cuando la reclamación o defensa del solicitante y el pleito incoado tengan en común una cuestión de hecho o de derecho.  Véase Regla 21.2 de las de Procedimiento Civil (32 LPRA Ap. V).

Este instrumento procesal no constituye "[...]fuente de derechos sustantivos, ni establece causa de acción" para la parte interventora".  *IG Builders*, supra.  De igual forma, si bien la intervención se debe auscultar desde un enfoque liberal, esto no significa que su uso deba ser otorgado de forma indiscriminada. Íd. a la pág. 321.

VIII.

La Regla 44.1 (d) de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d), permite la concesión de honorarios de abogado cuando una parte o su abogado o abogada haya procedido con temeridad o frivolidad.  Existe temeridad cuando una parte hace necesario un pleito que se pudo evitar, prolonga innecesariamente un pleito o causa que otra parte incurra en gestiones evitables. Véase *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 866 (2008); *Torres Ortiz v. ELA*, 136 DPR 556, 565 (1994); *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718-719 (1987).  Así pues, los honorarios por temeridad buscan "disuadir la litigación innecesaria y alentar las transacciones, mediante la imposición de sanciones a la parte temeraria, que compensen los perjuicios económicos y las molestias sufridas por la otra parte".  *Torres Ortiz v. ELA*, supra.

A diferencia de las costas, que sólo las puede recobrar quien prevalece en el pleito, no se requiere prevalecer para recobrar honorarios por temeridad. Regla 44.1 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V. Adviértase que la imposición de honorarios de abogado por temeridad es una facultad discrecional del tribunal que no será variada a menos que la misma constituya un abuso de discreción, o cuando la cuantía sea excesiva o exigua. Véanse *Monteagudo Pérez v. ELA*, 172 DPR 12, 31-32 (2007); *Ramírez Anglada v. Club Cala de Palmas*, 123 DPR 339, 350 (1989).

IX.

Concluimos que, contrario a lo resuelto por el TPI, (i) MTD puede, en esta etapa, cobrar las acreencias que entiende tiene a su favor y (ii) esta reclamación se puede instar por el Socio Corporativo, así como por el albacea de la sucesión del socio fallecido (el Causante). Veamos.

Según arriba expuesto, la norma es que el proceso de liquidación de una sociedad conlleva todas las operaciones necesarias para concluir los contratos pendientes, incluido el pago de deudas y el cobro de acreencias. Para dicho fin, subsiste la personalidad de la sociedad, al igual que ocurre con las corporaciones.

Como bien admite la Hija, cobrar acreencias es parte del proceso de liquidar una sociedad. Por tanto, es un contrasentido plantear, como la hace la Hija, que no procede una acción de cobro porque primero hay que liquidar la entidad. Precisamente, se entabló la acción como parte de ese proceso de liquidación. Contrario a lo que parece suponer la Hija, el proceso de liquidar una sociedad no necesariamente requiere de un trámite judicial particular o específico, ni tampoco se requiere que todos esos trámites ocurran en el contexto de un solo proceso judicial. No hay impedimento jurídico para que, como parte del proceso de liquidar

a MTD, se inste una acción judicial dirigida a cobrar una acreencia en particular.

Por otra parte, como socio de MTD, el Socio Corporativo está claramente legitimado para gestionar el cobro de la supuesta acreencia de MTD. Adviértase que dicha parte se beneficiará de esta gestión porque esta tiene el potencial de agrandar el caudal social a repartirse.

De forma similar, el Hijo, como albacea de la sucesión del otro socio de MTD, también tiene un interés legítimo en gestionar el cobro de la supuesta acreencia de MTD. Dicha gestión tiene el potencial de agrandar el caudal social a repartirse, de lo cual se beneficiarían todos los integrantes de la sucesión del Causante. Se trata de una gestión administrativa legítima dentro del ámbito de autoridad que tiene el albacea de una sucesión.

Incluso, el Hijo, simplemente como heredero del Causante, puede, sin el consentimiento de los integrantes de una sucesión, y como acto administrativo legítimo, procurar el cobro de las acreencias de dicha sucesión. En efecto, la norma reconocida ampliamente por la doctrina es que, "aun estando proindivisa la herencia, **cualquiera de los herederos puede ejercitar en beneficio de la masa común las acciones que correspondan al difunto**. ... [L]o adquirido por el heredero al ejercitar con tal carácter un derecho perteneciente a aquél de quien trae causa, no produce la adquisición para sí, sino a favor de la herencia, y queda sujeto por tanto, a la distribución que de esta se haga." Scaevola, *Código Civil*, tomo XII, libro III, título III, ed. 1950, pág. 55 (según citado en *Tropigas de P.R. v. Tribunal Superior*, 102 DPR 630, 639-640 (1974); (énfasis suplido)). En "cuanto al ejercicio de acciones ... cualquiera de los coherederos puede ejercitar en beneficio de la masa común las acciones que corresponderían al causante ...". Castán, *Derecho*

*Civil Español, Común y Foral,* tomo VI, volumen I, ed. 1960, pág. 247 (según citado en *Tropigas de P.R., supra,* 102 DPR a la pág. 640).[4]

Sobre el carácter supuestamente ganancial de la participación del Causante en MTD, es preciso aclarar, en primer término, que el récord no le permitía al TPI llegar a una conclusión al respecto. Por ejemplo, parte de la prueba documental arroja que la mención de la Esposa se hacía con el propósito de identificar al Causante y sus circunstancias[5], pero en otra prueba documental se identifica a la Esposa como compradora de las participaciones.[6]

Más aún, este asunto, sobre el cual existe controversia, se está dilucidando en una acción civil distinta, sobre liquidación de la Sociedad de Bienes Gananciales una vez compuesta por el Causante y la Esposa, proceso que continúa pendiente de adjudicación. Véase *Edwin Alonso Rodríguez y Otros v. Debbie Alonso Rodríguez y Otros,* MZ2023CV01690.

De todas maneras, para fines de este caso, el TPI no tenía que adjudicar si la Esposa tuvo participación directa en MTD, o si la participación del Causante en dicha entidad era ganancial. Ello porque, en cualquier caso, no se afectaría el derecho de MTD de proceder con su liquidación, incluido el cobro de la acreencia reclamada en las Demandas, ni tampoco la autoridad y legitimación del Socio Corporativo y del albacea del Causante para realizar dicha gestión. De hecho, si se adjudicara que era ganancial la

---

[4] Sobre el planteamiento del Socio Corporativo, a los efectos de que erró el TPI al permitir la intervención en este caso de la Hija, concluimos que no le asiste la razón. En atención a la naturaleza del interés de la Hija en los asuntos que se dilucidan en este caso, como heredera del Causante y albacea de la Esposa, el TPI podía válidamente y razonablemente autorizar su intervención.

[5] Entrada 216, SUMAC, Anejo 1*, Escritura # 76: Constitution of a Civil Partnership Under the Provision of Special Partnership Act,* pág. 1*;* Entrada 216, SUMAC, Anejo 3*, Escritura # 67: Modification of Civil Partnership,* pág. 2; Entrada 216, SUMAC, Anejo 7*, Escritura # 4: Second Modification of Civil Partnership*, pág. 2.

[6] Entrada 216, SUMAC, Anejo 4, *Contrato de Compraventa de Acciones Corporativas y Participación en Sociedad*, pág. 1; Entrada 216, SUMAC, Anejo 5, *Contrato de Compraventa de Acciones Corporativas y Participación en Sociedad*, pág. 2; Entrada 216, SUMAC, Anejo 6, *Contrato de Compraventa de Acciones Corporativas y Participación en Sociedad*, pág. 1.

participación del Causante en MTD, esta gestión de cobro, de ser exitosa, resultaría en el agrandamiento del caudal ganancial que se está liquidando[7].

Finalmente, en atención a que erró el TPI al desestimar las Demandas por las razones expuestas en la Sentencia, también erró al estimar que los Demandantes actuaron con temeridad.

X.

Por los fundamentos antes expuestos, se revoca la sentencia apelada y se devuelve el caso al Tribunal de Primera Instancia para trámites ulteriores compatibles con lo aquí resuelto y expuesto.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Es importante destacar las partes pueden solicitar en el pleito de liquidación ganancial y de la comunidad de bienes hereditarios, *Edwin Alonso Rodríguez y Otros v. Debbie Alonso Rodríguez y Otros*, MZ2023CV01690, que se ordenen las medidas cautelares que sean necesarias para salvaguardar el derecho de las partes a recibir lo que le corresponda de los bienes de MTD en liquidación.